UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GLOBAL BUILDING PRODUCTS LTD.; GLOBAL BUILDING PRODUCTS (12) LTD.; GLOBAL BUILDING PRODUCTS (17) LTD.; and FSR TREATMENT, INC., all Canadian corporations,<br><br>Plaintiffs,<br><br>v.<br><br>CHEMCO, INC.; CHEMCO ACQUISITION CORPORATION; and VERDANT WOOD TECHNOLOGIES, INC., all Washington corporations,<br><br>Defendants. | CASE NO. C12-1017 RSM<br><br>ORDER GRANTING PLAINTIFFS' PETITION FOR ORDER TO CONFIRM ARBITRATION AWARD AND DENYING DEFENDANTS' MOTION TO VACATE |

## **I. INTRODUCTION**

This matter is now before the Court on Plaintiffs' Petition for Order to Confirm Arbitration Award, (Dkt. # 1), and Defendants' Motion to Vacate Arbitration Award, (Dkt. # 18). These motions are considered together as they concern similar questions of law and fact. For the

reasons set forth below the Court grants Plaintiffs' petition, denies Defendants' motion, and directs the clerk to enter judgment confirming the arbitrator's award.

## II. BACKGROUND

Plaintiffs Global Building Products, Ltd., Global Building Products (12) Ltd., Global Building Products (17) Ltd., and FSR Treatment, Inc. (collectively "Global") are all Canadian corporations with their principal place of business in British Columbia, Canada. Global provides pressure treatment services that treat Western Red Cedar shakes and shingles with fire retardant chemicals. Global then sells these treated products to various customers in multiple markets.

Defendants Chemco, Inc., Chemco Acquisition Corporation, and Verdant Wood Technologies, Inc. (collectively "Chemco") are all Washington corporations with their principal place of business in Ferndale, Washington. Chemco is a specialty manufacturer of fire retardant chemicals used to fire retard a variety of wood products, including plywood, lumber, and wood shakes and shingles. Chemco developed, marketed, and sold these proprietary chemicals under various brand names including Thermex FR and FTX (collectively "Thermex FR"). In order to sell wood shakes and shingles in the State of California the shakes and shingles must be treated with an approved fire retardant. In 2007, Thermex FR was the only product available that had obtained a report of approval from the International Code Council Evaluation Service ("ICC") and a listing by the State of California Fire Marshal. The California Fire Marshal's listing is particularly difficult because it requires ten years of weather testing before the chemical is approved.

White Mountain Building Products, LLC, a/k/a Galchem Chemical, Inc., ("White Mountain") also manufactured a fire retardant chemical used on wood products, including shakes and shingles (the chemical herein referred to as "Galchem"). In 2001, White Mountain obtained a favorable ICC report for the use of its chemical on wood shakes and shingles but, as of 2007,

| 1  | had not received approval from the California Fire Marshal. In 2007, Global entered into a
| 2  | purchase agreement with White Mountain to acquire the rights to Galchem.
| 3  |       Meanwhile, in 2007, Chemco began soliciting offers to purchase its business or rights
| 4  | associated with its business including the fire retardant pressure treatment services using
| 5  | Thermex FR. Global expressed an interest and, in December 2007 after months of negotiation,
| 6  | Chemco and Global entered three separate Exclusive Licensing Agreements and a Toll
| 7  | Manufacturing Services Agreement (collectively the "Contract") for Thermex FR . The Contract
| 8  | provided that Global was to pay Chemco $2 million up front and a royalty of $6 per square for
| 9  | five years thereafter with a minimum total payment of $5 million, which Global paid.
| 10 |       During the negotiation, Global's Mr. Ed Watkins asked Chemco's CEO Mr. Fred
| 11 | Amundson why the contract was structured as a license instead of an outright purchase and sale.
| 12 | Mr. Amundson explained,

> The answer as to why this is a an [sic] exclusive license agreement as opposed to a purchase of the rights to the chemical is simply that we own the the [sic] right to use the chemical for our other business uses. The best way to keep these issues separate is through an exclusive license agreement.
>
> The bottom line is that you do own the chemical for your purposes. You can use it when and where you want. You can have it made anywhere you choose. We cannot use it anywhere in the word [sic] for the use that you have been granted. (This sounds a lot like you own it!) You are simply responsible for preserving the confidentiality of the chemical so that we can both use it for our purposes. This certainly would be different if we were not using the chemical for other business purposes, although it would still present us with some tax issues. All you are talking about is the name that is applied to the agreement.

Dkt. # 1, Ex. 1 at 11-12. Ultimately, the Contract provided Global the exclusive right to use Thermex FR and the associated technology, information, and product certifications for wood roofing purposes. For beneficial tax purposes, the initial license agreement was replaced by three agreements that covered three different time periods and applied to three different entities of

Global. The first agreement, between Chemco and Global Building Products, Ltd., provided an exclusive license for the period from December 1, 2007, through November 30, 2012. The second agreement, between Chemco and Global Building Products (12) Ltd., provided an exclusive license for the period from December 1, 2012, through November 30, 2017. Finally, the third agreement, between Chemco and Global Building Products (17) Ltd., provided an exclusive license for the period starting December 1, 2017, and continued in perpetuity.

In May 2010, Chemco entered a lease agreement with Global's competitor, the American Treating Company, LLC ("ATC") which is an entity of The Clarke Group (collectively the "Clark Group"), to lease Chemco's wood treatment facilities in Ferndale, Washington. Chemco also entered a Chemical Supply and License Agreement ("ATC License") with ATC relating to the sale of Thermex FR. Then in March 2011, ATC obtained an ICC report covering wood roofing shakes and shingles and in September 2011, received a listing by the California State Fire Marshall covering wood roofing shakes and shingles.

In April 2011, Plaintiffs brought a demand for arbitration claiming that Chemco breached the Contract by supplying a fire retardant chemical to the Clarke Group for wood shakes and shingles. The international arbitration was administered by the American Arbitration Association's International Centre for Dispute Resolution and a Final Award (the "Award") was issued in Plaintiffs' favor, and against Defendants, on June 8, 2012.

Plaintiffs petitioned this Court to confirm the Award, Dkt. # 1, and Defendants moved to vacate, claiming that the Award violates public policy and manifestly disregards the law, Dkt. # 18.

ORDER GRANTING PLAINTIFFS' PETITION FOR ORDER TO CONFIRM ARBITRATION AWARD AND DENYING DEFENDANTS' MOTION TO VACATE - 4

## III. DISCUSSION

**A. Jurisdiction, Venue, and Applicable Standards**

The parties agree that Plaintiffs' confirmation request is made pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, as incorporated in the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 201-208.[1] Dkt. # 1, 1; Dkt. # 15, 3. The Court has original jurisdiction of any action or proceeding that falls under the Convention. 9 U.S.C. § 203; *Gould*, 887 F.2d at 1362. Specifically, in order for an arbitral award to "fall[] under the Convention," 9 U.S.C. § 202, the award "(1) must arise out of a legal relationship (2) which is commercial in nature and (3) which is not entirely domestic in scope," *Gould*, 887 F.2d at 1362. Here, the award is nondomestic in nature because the three conditions are satisfied when there is a commercial contractual dispute involving foreign and domestic parties. Venue is proper when the action is brought in the district of the place of the arbitration. 9 U.S.C. § 204. Here, venue is proper because the arbitration took place in Bellingham, Washington.

Under the Convention, a district court "shall confirm the award unless it finds one of the grounds for refusal . . . of the award specified in the said Convention." 9 U.S.C. § 207; *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 835-36 (9th Cir. 2010). The party seeking to avoid enforcement of an arbitral award has the burden of proving the defense asserted. *Polimaster Ltd.*, 623 F.3d at 836. This is a substantial burden because of the strong public policy in favor of arbitration and the Court's narrow interpretation of the Convention's defenses. *Id.*

---

[1] The Court notes that the Convention and FAA Chapter 2 would apply regardless of the parties agreement because Section 202 of the FAA provides that the Convention governs all arbitral awards when they arise out of a legal relationship that is commercial in nature and that is not entirely domestic in scope. 9 U.S.C. § 202; *Ministry of Def. of Islamic Republic of Iran v. Gould, Inc.* ("*Gould*"), 887 F.2d 1357, 1362 (9th Cir. 1989). That situation is present in this case.

The Court conducts its review of the arbitrator's decision in "both [a] limited and highly deferential" manner and does not have the authority to "re-weigh the evidence." *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1132, 1134 (9th Cir. 2003) (internal quotations and citations omitted).

Article V of the Convention provides seven grounds for refusing an arbitral award but only two apply in this case. Convention art. V. First, an award may be vacated if a "competent authority in the country where recognition and enforcement is sought finds that . . . [t]he recognition or enforcement of the award would be contrary to the public policy of that country." Convention art. V(2)(b).

Second, recognition and enforcement of an award may be refused if the challenging party provides proof that the award is set aside "by a competent authority of the country in which, or under the law of which, that award was made." Convention art. V(1)(e). Defendants argue that this provision allows Defendants to assert the full breadth of the defenses provided under Chapter I of the FAA. Dkt. # 15, 4. The Ninth Circuit has yet to address the availability of the FAA defenses in addition to those provided under Article V of the Convention. *ESCO Corp. v. Bradken Res. PTY LTD.*, Civ. No. 10-788-AC, 2011 WL 1625815, at *8 (D. Or. Jan. 31, 2011); *Kaliroy Produce Co., Inc. v. Pac. Tomato Growers, Inc.*, 730 F. Supp. 2d 1036, 1040 (D. Ariz. 2010); *LaPine v. Kyocera Corp.*, No. C 07-06132 MHP, 2008 WL 2168914, at *6 (N.D. Cal. May 23, 2008). Therefore, prior to addressing the merits of Defendant's arguments, the Court must determine the applicability of Chapter I's defenses.

A majority of circuits addressing this issue have held that the Convention and the FAA provide "overlapping coverage" when a nondomestic award is rendered in the United States. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.* ("*Yusuf*"), 126 F.3d 15, 20-23 (2d

Cir. 1997); *accord Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 292 (3d Cir. 2010); *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 709 (6th Cir. 2005), *abrogated on other grounds by Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008); *Lander Co., Inc. v. MMP Invs., Inc.*, 107 F.3d 476, 481 (7th Cir. 1997); *see also Termorio S.A. E.S.P v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (adopting *Yusuf*'s dual regimes for review of arbitral awards); *Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742, 746 (5th Cir. 2008) (adopting *Yusuf*'s dual regimes for review of arbitral awards). Additionally, three courts within the Ninth Circuit have held the same. *ESCO Corp.*, 2011 WL 1625815, at *8 ("In the absence of additional direction from the Ninth Circuit, the court concludes that Bradken may assert the grounds for vacating the award in Chapter I of [the] FAA and the defenses in the Convention, and the appropriate standard of review is under both 9 U.S.C. § 10(a) and the Convention."); *Kaliroy Produce Co., Inc.*, 730 F. Supp. 2d at 1040 ("Because the Convention does permit courts of the forum country to set aside a non-domestic award based on a forum state's arbitral law and the Ninth Circuit has not yet addressed this issue, the Court finds the Convention's remedies are not exclusive."); *LaPine*, 2008 WL 2168914, at *6 ("In the absence of further guidance from the Ninth Circuit, the court concludes that the appropriate standard of review is under both Article V and 9 U.S.C. section 10.").

All of these courts adopted the reasoning established in *Yusuf* where the Second Circuit noted that "the Convention mandates very different regimes for the review of arbitral awards (1) in the state in which, or under the law of which, the award was made, and (2) in other states where recognition and enforcement are sought." 126 F.3d at 23. The court reasoned that "when an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." *Id.* However, when an

enforcement action is brought in "the state in which, or under the law of which, that award is made" a court is "free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Id.* (citing Convention art. V(1)(e)). The court reasoned that the history and plain language of the Convention make it clear that a motion to vacate or set aside an award under the Convention "is to be governed by [the] domestic law of the rendering state, despite the fact that the award is nondomestic within the meaning of the Convention." *Id.*

In the absence of direction from the Ninth Circuit and because of the great weight of well-reasoned authority of the various circuit courts and the district courts within the Ninth Circuit, the Court adopts the reasoning provided by the Second Circuit in *Yusuf*. 126 F.3d at 20-23. Thus, because the award was issued in the United States, the Court concludes that Defendants may assert the defenses provided by Chapter I of the FAA and the Convention and that the appropriate standard of review is under both 9 U.S.C. § 10(a) and the Convention.[2]

Chapter I of the FAA applies to actions under Chapter II to the extent that they do not conflict. 9 U.S.C. § 208. This "overlapping coverage" permits a party to assert the "full panoply of express and implied grounds for relief" provided in Chapter I. *Yusuf*, 126 F.3d at 20-23 (internal quotations and citations omitted). Section 10 of Chapter I provides four instances where

---

[2] Similar to the cases before our sister courts in this circuit, the decision to adopt and apply the Second Circuit's reasoning is somewhat academic because the outcome is the same whether the court applies the standards set forth under the Convention or in Chapter I of the FAA. *ESCO Corp.*, 2011 WL 1625815, at *9 ("In any event, the court's resolution of whether the defenses under Chapter I of the FAA are available in addition to those under the Convention is not critical to the outcome here."); *La Pine*, 2008 WL 2168914, at *6 ("Ultimately . . . the answer to the question presented is perhaps academic because . . . the outcome is the same regardless of whether the court applies the standards set forth under Article V of the Convention or the standards set forth in Chapter I of the FAA."); *see Kaliroy Produce Co, Inc.*, 730 F. Supp. 2d at 1047 (finding no manifest disregard of the law under 9 U.S.C. § 10(a)).

an arbitral award may be vacated. 9 U.S.C. § 10. Defendants have asserted only the fourth, that the award should be vacated because the "arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); Dkt. # 18, 4. Thus, the Court may vacate an award when the award is either "completely irrational or constitutes a manifest disregard of the law." *Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (internal quotations and citations omitted). Defendants' manifest disregard argument is addressed first.

**B. Manifest Disregard of the Law**

Defendants contend that Plaintiffs' petition must be denied and the Award vacated because the arbitrator manifestly disregarded provisions of the Washington State Constitution, WASH. CONST. art. XII, § 22, and the Sherman Act, 15 U.S.C. §§ 1, 2, 14. Dkt. # 15, 4; Dkt. # 18, 4. Defendants argue that the Award disregards the law because it creates a monopoly for the sale of fire retardant chemicals to treat wooden shakes and shingles sold in California. Dkt. # 18, 2-4. The Court disagrees.

In order to prevail on a claim of "manifest disregard," the movant must show "more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (internal quotations and citations omitted). Instead, the movant must show that it is "clear from the record that the arbitrator [] recognized the applicable law and then ignored it." *Comedy Club, Inc.*, 553 F.3d at 1290 (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)) (alteration in original). Mere allegations of error are insufficient. *Collins*, 505 F.3d at 879 (internal quotation and citation omitted). Additionally, the governing law alleged to have been ignored . . . must *be well defined, explicit, and clearly applicable*." *Id.* at 879-80 (emphasis in original, internal quotations and citations omitted).

Article XII Section 22 of the Washington State Constitution provides, in pertinent part, that

> [m]onopolies . . . shall never be allowed in this state, and no incorporated company . . . in this state shall directly or indirectly . . . make any contract with any other incorporated company, foreign or domestic . . . for the purposes of fixing the price or limiting production . . . of any product or commodity.

WASH. CONST. art. XII, § 22.

Additionally, U.S. antitrust law, enforced by the Sherman Act and codified in 15 U.S.C. §§ 1, *et. seq.*, prohibits restrictions on trade or commerce. Specifically, Section 1 prohibits contracts that restrain "trade or commerce among the several States, or with foreign nations," 15 U.S.C. § 1, while Section 2 makes establishing or participating in a monopoly illegal, 15 U.S.C. § 2. Finally, Section 14 prohibits the sale of a good or the contracting for the sale of a good that "substantially lessen[s] competition or tend[s] to create a monopoly in any line of commerce." 15 U.S.C. § 14. Thus in order to prevail, Defendant must show that the arbitrator recognized the law regarding "monopoly" and then ignored it when constructing the award.

Here, the Award provides, in pertinent part, that

> 3.5 . . . Claimants own the rights in, and had and have the sole and exclusive right to use, authorize use, and disclose for any use or purpose associated in any way with wood roofing, or with the approval or certification of any wood roofing treatment chemical, process or product, the various tests, data and reports used by Chemco to secure the ESR-1410 report (together with any corresponding reports, certifications, or listings, including the California State Fire Marshal listing) for Products treated with the Chemco Chemical using the Chemco wood roofing process (the "Wood Roofing Tests and Data").
>
> 3.6 The formulation(s) of the Chemco Chemical, the manufacturing process(es) of the Chemco Chemical, and the Chemco process(es) for treating the Products using the Chemco Chemical (collectively the "Chemco Confidential Information") were intended to be maintained in confidence by the parties. Chemco and its officers, directors, employees, shareholders, and agents, and anyone acting in concert with them, are hereby restrained from doing anything to impair the confidentiality of the Chemco Confidential Information.

> 5. Chemco is restrained from selling, supplying, transferring, licensing, or otherwise making available, the Chemco Chemical (or any chemical derived from the confidential disclosure of the Chemco Chemical formulation and associated manufacturing process) to the Clarke Group, or to any other person, if Chemco knows or has reason to believe, that the Chemco Chemical (or any chemical derived from the confidential disclosure of the Chemco Chemical formulation) is being used, or is likely to be used, by the recipient in the fire-retardant treatment of the Products. This restraint specifically applies to any ["]CedarPlus" or "CPX" branded fire retardant currently being manufactured by Chemco for supply to American Treating Company LLC.

Dkt. # 1, Ex. 1 at 23-24.

Defendants assert that these provisions show that the arbitrator manifestly disregarded the law because the restrictions in the provisions, combined with Plaintiffs' exclusive license of Galchem, grant a monopoly to Plaintiffs for the production, sale, and distribution of all fire retardant chemicals used on wooden shakes and shingles to be sold in California. Dkt. # 25, 4-5.

The Court is granted "an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003). Thus, the Court must confirm an arbitrator's award "even in the face of erroneous findings of fact or misinterpretations of the law" and may only vacate an award when the arbitrator "display[s] a manifest disregard for the law." *Id.* at 997, 1002-03. Consequently, factual errors and good faith misinterpretations of the law "lie far outside the category of conduct embraced by [Section] 10(a)(4)" and are not grounds for vacation. *Id.* at 1003.

Defendants ask the Court to disregard the arbitrator's factual findings and credibility conclusions and re-weigh the evidence by requesting that the Court vacate the Award on the

basis that the Contract created a monopoly in violation of the Washington State Constitution and the Sherman Act.[3] Dkt. # 18. This, the Court will not do. *Coutee*, 336 F.3d at 1134.

Rather than ignore the applicable law, the arbitrator specifically addressed Defendants' claims of monopoly under both the Washington State Constitution and the Sherman Act. Dkt. # 1, Ex. 1 at 13-14, 21-22. After reviewing the parties' arguments and the evidence presented, the arbitrator concluded that a monopoly had not been created by the exclusive licensing agreement because Defendants were unable to establish the required elements of a monopoly.[4] Dkt. # 1, Ex.

---

[3] The Court notes that the assertions for a finding of a monopoly made in Defendants' motion, Dkt. # 18, are indistinguishable from the assertions made to, and rejected by, the arbitrator during the arbitration, *see Resp'ts' Arbitration Closing Br.*, Dkt. # 22, Ex. 18 at 67-104.

[4] The arbitrator found that

> The Watkins Group's 2007 Transaction with Chemco . . . benefitted that market and was not shown to create a monopoly. . . . None of the factual elements of a claim of monopolization was established by the evidence presented. In particular, no analytically valid or persuasive definition of a "relevant market" was offered or established, either for use with respect to Respondents' antitrust defenses or counterclaims. In this regard, Respondents' evidence failed to take proper account of the extent to which FSR's alleged market power, allegedly based on providing one input to a product sold in a large market, is constrained and diluted by competition from other sellers of wooden shakes, the availability of other alternatives (asphalt or composition shingles, clay tiles, metal roofing[,] and various other roofing products) to cedar shakes as roofing materials, and the realistic risk of new entrants. In addition, Chemco failed to establish that Claimants engaged in any wrongful exclusionary conduct to acquire or maintain any alleged monopoly power in any relevant market. In particular, . . . the evidence failed to establish that Claimants' pricing practices following the 2007 Transaction were in any way improper under the antitrust laws or indicative of possession of or improper use of monopoly power. Dkt. # 1, Ex. 1 at 13-14.

And,

> In addition to being unsupported by the evidence offered, the antitrust counterclaim also failed because the legal elements necessary to establish a claim of monopolization were not demonstrated. Based on the legal authorities submitted, no legally permissible definition of a "relevant market" was

1 at 13-14. In making his conclusion, the arbitrator specifically questioned the credibility of Defendants' witness Dr. Kelly and found that "Dr. Kelly's various opinions in support of finding alleged antitrust violations by Claimants were *unsubstantiated*, *incomplete*, and *unpersuasive*." Dkt. # 1, Ex. 1 at 14 (emphasis added). Ultimately, the arbitrator accepted Plaintiffs' witness testimony and, based on that evidence, determined that Defendants had not "established the factual elements of a claim of monopolization." *Id.* at 13.

Defendants contend that the arbitrator's findings and analysis made during the arbitration do not apply to the issues of whether the Award manifestly disregards the law. Dkt. # 25, 3. This claim has no merit.

The Award reinstates the provisions of the contract granting an exclusive license in perpetuity. Thus, the findings of fact and conclusions of law made during the arbitration regarding the existence of a monopoly are inextricably linked to the relief provided in the Award. Because confirmation is "required even in the face of erroneous findings of fact or misinterpretations of law" and the Court may only vacate an award if the arbitrator "manifestly disregarded the law," the Court accepts the arbitrator's Award findings and conclusions regarding the existence of a monopoly and applies them to the relief granted in the Award. *Kyocera Corp.*, 341 F.3d at 997-98. To do otherwise in this case would undermine the Congressional intent and purpose behind arbitration by permitting a disgruntled party to re-

---

established. In addition, Chemco failed to establish, as a matter of law, that the conduct of Claimants challenged in the antitrust counterclaim constituted either wrongful exclusionary conduct or the improper acquisition or maintenance of monopoly power in any relevant market. Respondents also failed to establish that Claimants' pricing practices following the 2007 Transaction were indicative of possession of or improper use of monopoly power, or that the restrictions imposed on Chemco in the 2007 Transaction agreements violated any aspect of the antitrust laws. Dkt. # 1, Ex. 1 at 21-22.

litigate the entire matter, previously addressed in arbitration, in federal court. Where, as here, an arbitrator recognizes the law, directly addresses its applicability, and finds that the facts do not establish a violation of the law, the Court finds that there no evidence of a manifest disregard of the law.

Finally, Defendants contend that the holding in *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d at 1289-94, controls and supports its claim for vacation, Dkt. # 25, 5-6. However, unlike the arbitrator in *Comedy Club*, the arbitrator here has not ignored controlling law. Dkt. # 1, Ex. 1 at 13-14, 21-22. In *Comedy Club*, the court vacated the award not because of the restriction itself but rather because the arbitrator incorrectly interpreted California law and ignored the controlling precedent of the California Court of Appeals. 553 F.3d at 1293. In that case, the arbitrator ignored the law by holding that the governing case law was inapplicable to the case at hand and then fashioned an award that was in direct conflict with that precedent. *Id.* at 1292-93. Therefore, the court vacated a portion of the award because the arbitrator manifestly disregarded the governing law. *Id.* at 1293.

This case is vastly different. Rather than ignore the law, the arbitrator applied the controlling law and found that the facts did not establish the elements required to establish a monopoly. Dkt. # 1, Ex. 1 at 13-14, 21-22. Thus, there is no manifest disregard.

**C. Contrary to the Public Policy of the United States**

Defendants assert that the Award should be vacated because recognition or enforcement of the Award establishes a monopoly which is in violation of the public policy of the United States. Dkt. # 18, 10-12. The Court disagrees.

"The public policy exception in Article V(2)(b) of the Convention is very narrow, and applies only where enforcement of the award would violate 'the most basic notions of morality and justice.'" *Kaliroy Produce Co., Inc.*, 730 F. Supp. 2d at 1042 (quoting *Telenor Mobile*

*Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 357 (S.D.N.Y. 2007) (internal citations omitted). The party opposing the award has the burden of proving that enforcement of the award would violate public policy. *Id.*

The Supreme Court instructs that a court should enforce an arbitrator's award unless there is a violation of a public policy that is "well defined and dominant, and . . . [that is] ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983) (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)). Here, Defendants assert that "public policy prohibits enforcement and the award of damages arising from [a] contract that violates anti-trust restrictions." Dkt. # 18, 10. Defendants' sole contention that the Award violates public policy is based on the premise that the Award "enforces an illegal monopoly in violation of the Washington State Constitution and the Sherman Act." *Id.* at 4.

Defendants' argument requires that in order to find a violation of public policy the Court must necessarily first find that the Award creates an unlawful monopoly. Thus, Defendants' again ask the Court to re-weigh the evidence. However, the Court accepts the arbitrator's findings of fact and, as discussed above, Defendants failed to establish that the Contract, and thus the Award, created a monopoly. Consequently, there is no violation of public policy and Defendants' motion to vacate is therefore DENIED.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiffs' Petition for Order to Confirm (Dkt. # 1) is GRANTED.

(2) Defendants' Motion to Vacate (Dkt. # 18) is DENIED.

(3) The Clerk is directed to forward a copy of this Order to plaintiffs and to all counsel of record.

Dated this 18th day of October 2012.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE